IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JOHN DOE, | ) | Case No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | COMPLAINT, JURY DEMAND, AND |
| | ) | DESIGNATION OF PLACE OF TRIAL |
| ELWOOD PUBLIC SCHOOL | ) | |
| DISTRICT, a Nebraska political | ) | |
| subdivision; DAVID BLESSING, | ) | |
| individually and in his official capacity, | ) | |
| and ALLIED INSURANCE COMPANY, | ) | |
| a Iowa corporation, | ) | |
| | ) | |
| Defendant. | ) | |

John Doe, for his cause of action against Defendants, by and through his counsel of record, alleges and avers:

PARTIES, JURISDICTION AND VENUE

1.

John Doe ("DOE") is a resident of Arapahoe, Furnas County, Nebraska. He is named by this pseudonym due to the humiliating nature of the events underlying this case, although on information and belief his true identity is well known to all Defendants herein. Defendant Elwood Public School District ("EPSD") is a Nebraska political subdivision. Defendant David Blessing ("BLESSING") is and was employed by Defendant EPSD as a school guidance counselor at all relevant times, and is liable for his actions in his individual and official capacities. Defendant Allied Insurance Company ("ALLIED") is an Iowa corporation doing business in the State of Nebraska; it was an agent of EPSD at all relevant times since at least 1999. Any and all actions undertaken by any and all of the Defendants constituted actions under color of state law.

2.

This action is brought pursuant to the provisions of 28 U.S.C. §§1331 and 1333 and 42 U.S.C. §1983, 1985, and 1986. The proper venue for this action is the United States District Court for the District of Nebraska because the acts and omissions complained of herein occurred in Elwood, Gosper County, Nebraska and Arapahoe, Furnas County, Nebraska.

## FACTUAL BACKGROUND

3.

From August 1992 until May 1994, EPSD employed a teacher named Michael Kluck. During his tenure at EPSD, EPSD knew or should have known that Kluck had a propensity toward inappropriate, sexualized behavior toward students.

4.

Since at least November 1992, Kluck had been "grooming" DOE, then a student in EPSD, for eventual molestation and in so doing was acting within his capacity as an employee of and in the course and scope of his employment with EPSD. Kluck befriended DOE and his family, and gained the trust and confidence of DOE's parents as a member of the EPSD professional staff and as a valuable mentor to DOE. For the purpose of furthering Kluck's duties as a member of the EPSD professional staff, Kluck also sought and gained the trust, friendship, admiration and obedience of DOE. As a result, DOE was conditioned to comply with Kluck's direction and to view and respect him as a person of authority in vocational, moral and ethical matters. This course of conduct is what is meant by reference to "grooming" activities.

5.

In spite of its knowledge of Kluck's propensities, EPSD retained Kluck as a teacher for the

spring semester of 1993 and the 1993-94 school year. EPSD made no meaningful effort to restrict Kluck's access to or activities with students and imposed no restrictions on him relative to the complaints that were investigated in late 1992. Nor did EPSD make any meaningful effort to monitor Kluck's behavior or to investigate the extent to which Kluck was engaging in "grooming" activities with young students, including DOE.

6.

The grooming was committed in direct connection with and for the purposes of fulfilling Kluck's employment and agency with EPSD; was committed within the time and space of his employment and agency with EPSD, was done directly in the performance of his duties as a member of the EPSD professional staff; and was at least initially and partially motivated by a desire to serve the interests of EPSD. Kluck's grooming of DOE contributed causally to the abuse and the damages described below.

7.

In 1993, Kluck, using the authority and position of trust as a member of the EPSD professional staff, after gaining DOE's trust and confidence through the above-described grooming activities, sexually assaulted DOE. Kluck committed the assault after deliberately gaining DOE' trust, and DOE' family's trust, in his capacity as an employee of and in the course and scope of his employment with EPSD. This occurred after the other students' complaints regarding Kluck's behavior had been received and investigated by law enforcement and after EPSD had failed to take meaningful action in response to the complaints, to include terminating Kluck's employment or, at the very least, investigating the degree to which Kluck was grooming students and attempting to identify which students Kluck was grooming.

8.

DOE told no one about the assault. EPSD asked Kluck to resign in May 1994, and upon his resignation Kluck immediately moved from Elwood to LaPorte, Texas. Thereafter, Kluck pled guilty to and was convicted of sexual abuse of a child in the State of Texas for subsequent assaults on another child.

9.

In 1997, Kluck confessed to a counselor that he had molested DOE, specifically naming DOE and describing the molestation. In May 1997, that counselor notified then-Gosper County Attorney Carleton Clark of Kluck's report. Kluck himself then called Clark and confessed to molesting DOE. Clark notified DOE' parents of the information received from Kluck and his counselor. Clark also personally notified various employees and agents of EPSD, including but not limited to BLESSING, of the information received from Kluck and his counselor.

10.

DOE's parents then discussed this report with BLESSING in February 1998, and asked BLESSING to provide counseling for DOE relative to his molestation by Kluck. DOE was traumatized and humiliated by the assault, however, and was unable to meaningfully undergo counseling at that time. DOE dropped out of school without completing requirements for a diploma in January 1999, a fact obviously known to BLESSING and EPSD.

11.

By 1999, EPSD had been sued by another victim molested by Kluck. That case was captioned *Kelly v. Elwood Public School District*. ALLIED provided liability insurance coverage for EPSD and retained counsel to represent EPSD in the *Kelly* case. During the *Kelly* litigation, agents of ALLIED

and EPSD learned that Kluck had molested DOE, although they did not reveal that fact during the course of discovery in *Kelly*. ALLIED and EPSD and their agents were aware that the fact of another sexual assault victim of Kluck meant another possible lawsuit against EPSD.

12.

In April 2003, BLESSING and a specific agent of ALLIED, acting in concert with EPSD and ALLIED and in the course and scope of their employment with EPSD, directly contacted DOE, who was at that time a few months short of his 22nd birthday, in a series of telephone calls. In this series of events, the particular agent of ALLIED was acting both as an agent of ALLIED and as an agent of EPSD.

13.

BLESSING and ALLIED's retained counsel, in separate conversations with DOE, advised DOE that he would be required by plaintiffs' counsel in the *Kelly* case to publicly testify about the details of being molested by Kluck in the immediate future. BLESSING and ALLIED's retained counsel further represented to DOE that he could be spared that experience if he signed an affidavit denying that Kluck molested him. Neither BLESSING nor ALLIED's retained counsel advised DOE of the legal consequences of signing such an affidavit or of whether he had any other options; nor did either BLESSING or ALLIED's retained counsel advise DOE that signing such an affidavit could have the effect of impairing or even foreclosing DOE's own cause of action once he discovered that he had a cause of action. Nor did either BLESSING or ALLIED's retained counsel advise DOE to seek legal counsel (other than ALLIED's retained counsel) before signing such an affidavit. BLESSING and ALLIED's retained counsel held themselves out as having DOE's best interests at heart, and further held themselves out as protecting DOE from the plaintiffs' counsel in the *Kelly*

case by providing a way by which DOE would not have to describe the details of his molestation for the first time ever in open court.

14.

DOE agreed to sign the affidavit, which was prepared by ALLIED's retained counsel. Thereafter, on October 13, 2003, ALLIED's retained counsel, acting at the behest of ALLIED and EPSD, caused additional psychological trauma and distress to DOE.

15.

As a result of Kluck's sexual abuse, molestation, and breach of authority, trust and position as a member of EPSD's professional staff and authority figure to DOE, DOE has suffered severe and debilitating emotional injury, pain and suffering, emotional trauma, and permanent psychological damage. This damage has caused DOE to incur and will continue to cause DOE to incur costs for counseling and psychological treatment, past and future.

16.

As a result of the conduct of BLESSING and ALLIED's retained counsel, in concert with and direction of EPSD and ALLIED, in breaching their own fiduciary duties to DOE and breach of authority, trust and positions as members of and/or affiliations with EPSD, DOE has suffered additional and compounded emotional injury, pain and suffering, emotional trauma and confusion, and psychological damage. DOE has also suffered potential impairment of his cause of action against EPSD, for whom BLESSING, ALLIED's retained counsel and ALLIED were all working when they pressured DOE into signing an affidavit they knew to be false. Further, DOE suffered emotional and psychological damage by his treatment by ALLIED's retained counsel, who was acting in the course and scope of his employment with EPSD and ALLIED, in the events of October 13, 2003. This

damage, too, will cause DOE to incur costs for counseling and psychological treatment, past and future.

FIRST CAUSE OF ACTION

42 U.S.C. § 1983 – DEFENDANT EPSD

17.

DOE incorporates Paragraphs 1-16 above as if fully set forth herein.

18.

DOE has a right under the Constitution of the United States to be free from sexual molestation by employees of governmental entities.

19.

At all times relevant to this Complaint, Kluck was acting under color of law – under the constitutions, statutes, administrative rules, customs, policies and usages of the Elwood Public School District, State of Nebraska and the United States – and had assumed the responsibilities, activities, and rights involved in exercising his role as a member of EPSD's professional staff.

20.

When DOE was under Kluck's supervision and care, Kluck acted with deliberate indifference to DOE's known and recognized constitutional and legal rights to bodily integrity and to be free from sexual abuse, and Kluck actively participated in the deprivation of DOE's constitutional rights by sexually molesting DOE.

21.

Kluck's conduct, within his duties as a member of EPSD's professional staff, under color of state law, deprived DOE of rights, privileges and immunities secured by the United States

Constitution. Particularly, DOE was deprived of his constitutional liberty interest in bodily integrity and to be free from sexual and emotional abuse and the threat of such abuse perpetrated by a member of EPSD's professional staff who was acting as a teacher, coach, guide and mentor.

22.

As a result of Kluck's deprivation of DOE's constitutional liberty interest in being free from sexual and emotional abuse, DOE has incurred damages as set forth in paragraph 15 above.

SECOND CAUSE OF ACTION

42 U.S.C. § 1983 – DEFENDANT EPSD

23.

DOE incorporates paragraphs 1-22 above as if fully set forth herein.

*Count I – Policy or custom of ignoring reports*

24.

EPSD established a special relationship with DOE and DOE's parents when it held itself and its professional staff out as safe and trustworthy. In so doing, EPSD had a duty to exercise reasonable care in the selection, training, assignment, supervision and retention of its professional staff, including Kluck.

25.

At all times relevant to this Complaint, EPSD had a custom or practice of fundamentally ignoring signs and reports of misconduct, including clear rule and boundary violations by its professional staff. EPSD ignored reports, knowledge and signs of inappropriate activities between Kluck and certain students, including DOE; ignored such reports, knowledge and signs of Kluck spending inappropriate amounts of time alone with students, including DOE; ignored reports,

knowledge and signs of inappropriate conduct and behavior by Kluck toward certain students; and ignored commonly known information and rumors that Kluck was drawn to students in an inappropriate way. Specifically, EPSD failed to act on knowledge it held through its agents, including warnings about Kluck's inappropriate behavior and boundary violations toward students given to EPSD by the Gosper County Sheriff's Office, a mandatory child abuse reporter under the Nebraska Revised Statutes.

26.

By ignoring reports and signs of Kluck's misconduct committed within and fostered by his employment as a member of EPSD's professional staff, EPSD acted with deliberate indifference to a known risk of constitutional deprivation to DOE and other students who were in contact with Kluck.

27.

As a result of EPSD's deliberate indifference to the risk of deprivation of DOE's constitutional liberty interest in being free from sexual abuse, DOE incurred damages as set forth in paragraph 15 above.

28.

Prior to 1997, DOE did not discover, nor could he have reasonably discovered, that EPSD had a custom or practice of ignoring knowledge or notice of Kluck's misconduct and boundary violations, because such knowledge was specifically held by officers and agents of EPSD, who did not reveal such information until after it had been sued by another victim of Kluck's molestation.

*Count II – Failure to train*

29.

At all times relevant to this Complaint, EPSD had a custom or practice of failing to train its

employees to be observant of and act upon signs and indications of inappropriate relationships between EPSD employees and students.  EPSD failed to implement training materials and programs related to recognizing and understanding patterns of sexual abuse in teaching, coaching, mentoring and superior-subordinate relationships with students.  In particular, EPSD failed to train its employees to recognize the dangers and warning signs of grooming and sexual abuse of students.

30.

Grooming and sexual abuse of students was at all times relevant to this complaint a known danger inherent in schools, and the right to bodily integrity and being free from sexual abuse by state actors was a recognized constitutional right.  By failing to train its employees to recognize warning signs and dangers of sexual abuse, particularly in relation to the interactions between employees and students, EPSD acted with deliberate indifference to a known risk of constitutional deprivation to DOE and other students.

31.

As a result of EPSD's deliberate indifference to the risk of deprivation of DOE's constitutional liberty interest in bodily integrity and being free from sexual abuse, DOE has incurred damages as set forth in paragraph 15 above.

THIRD CAUSE OF ACTION

NEGLIGENT SUPERVISION AND RETENTION BY EPSD

32.

Plaintiff incorporates paragraphs 1-31 above as if fully set forth herein.

33.

The molestation of DOE by Kluck was proximately caused by EPSD in one or more of the

following particulars:

a. Failure to take appropriate measures to investigate reports on inappropriate behavior by Kluck toward students as those reports were received;

b. Retaining Kluck for the 1993-94 school year notwithstanding Kluck's inappropriate behavior toward students;

c. Failure to at least more closely supervise Kluck and monitor his interactions with students, to include watching for grooming activities, as reports of inappropriate behavior by Kluck toward students were received;

d. Failure to follow Defendant's own procedures for handling complaints of illegal and/or injurious conduct against employees of EPSD;

e. Failure to advise parents of EPSD students of information known to and held by EPSD regarding inappropriate behavior by Kluck.

34.

As a result of EPSD's negligent supervision and negligent retention of Kluck as a member of EPSD's professional staff, DOE has incurred damages as set forth in paragraph 15 above.

FOURTH CAUSE OF ACTION

42 U.S.C. § 1983 – DEFENDANTS BLESSING AND ALLIED

35.

Plaintiff incorporates paragraphs 1-34 as if fully set forth herein.

36.

At all times relevant to this Complaint, Defendant BLESSING was acting under color of law – under the constitutions, statutes, administrative rules, customs, policies, and usages of the Elwood Public School District, the State of Nebraska and the United States – and he had assumed the responsibilities, activities and rights involved in exercising his role as a guidance counselor and member of the EPSD professional staff.

37.

Just so, at all times relevant to this Complaint, Defendants ALLIED was the liability insurance carrier for EPSD and was acting under color of law – under the constitutions, statutes, administrative rules, customs, policies, and usages of the Elwood Public School District, the State of Nebraska and the United States – in that it had reached an agreement and a meeting of the minds with representatives of EPSD, including but not limited to ALLIED's aforementioned agent and BLESSING.

38.

At some point between January 1, 1999 and April 30, 2003, there was a mutual understanding and meeting of the minds between ALLIED and its agents and representatives, including but not limited to ALLIED's aforementioned agent; EPSD and its agents and representatives, including but not limited to ALLIED's retained counsel; and BLESSING. The purpose of the agreement was to protect EPSD from liability in the case of *Justin Patrick Kelly v. Elwood Public School District et al*, Gosper County District Court Case No. Ci01-20, and further to protect EPSD and BLESSING from liability from DOE by preventing DOE from discovering his cause of action against EPSD and BLESSING.

39.

The agreement between ALLIED, BLESSING, EPSD and ALLIED's retained counsel was thus to commit an abuse of process of the civil justice system against, and inflict emotional trauma upon, DOE. This damage includes but is not limited to impairment of his due process right to pursue compensation for injury and his right to trial by jury, by:

a. BLESSING and ALLIED's retained counsel pressuring DOE to sign a false

       affidavit denying the fact of his molestation, when ALLIED, EPSD, BLESSING and ALLIED's retained counsel had long known that Kluck molested DOE and that Kluck in fact had confessed to molesting DOE;

  b.    EPSD and ALLIED allowing, encouraging and/or instructing ALLIED's retained counsel and BLESSING to hold themselves out to DOE as having DOE's best interests at heart, when in fact their intention and scheme was to cause DOE to impair his own cause of action before he had even discovered it to protect EPSD, with reckless disregard to the psychological consequences for DOE of the misrepresentation and betrayal by authority figures affiliated with EPSD;

  c.    ALLIED's retained counsel, acting as an agent of ALLIED and of EPSD, thereafter subjecting DOE to additional psychological trauma in the days leading up to and including October 13, 2002..

40.

These actions were performed for the purpose of injuring DOE, in reckless if not total disregard for DOE's rights, and in a manner that was malicious, wanton and oppressive. The actions and directions of ALLIED were performed in ALLIED's capacity as a state actor for the purposes of 42 U.S.C. § 1983, having entered into a meeting of the minds with EPSD and its agents and representatives.

41.

As a result of ALLIED's and BLESSING's deliberate indifference to the risk of deprivation of DOE's constitutional liberty interest in due process, his right to a jury trial, his right to be free from deliberate abuse of process and his right to be free from psychological trauma, DOE has incurred damages as set forth in paragraph 15 above.

PUNITIVE DAMAGES

42.

Plaintiff incorporates by reference the allegations contained in paragraph 1-41 above as

though fully set fourth herein.

43.

In addition to compensatory damages, DOE hereby makes a claim for punitive damages against defendants in an amount to be proven at trial for the willful and wanton acts and omissions of defendants, to include violation of DOE's civil rights, as alleged herein. The acts and omissions of defendants in this case were so gross and culpable in nature that they constitute reckless indifference and wanton disregard for the law and for the lives and safety of others, including DOE. Defendants committed the acts and omissions alleged herein and subjected DOE to improper treatment that caused DOE to suffer emotional distress so severe that no person should be expected to endure it, to include allowing a known sexual predator to remain on a school's professional staff; coupled with thereafter attempting to deprive DOE of his cause of action before DOE had even discovered his cause of action, for purposes of perpetuating a cover-up at the foreseeable expense of a psychologically-damaged young man. Defendants' actions should be punished, and an example should be made so that these actions and omissions are not repeated.

44.

The recovery of punitive damages is permitted under the federal civil rights statutes for reckless and callous indifference to the federally protected rights of others, and is thus appropriate in this case. This instance of reckless and callous indifference to DOE's safety and constitutional rights should be punished through the imposition of punitive damages so as to make an example of conduct that will not be tolerated.

## ATTORNEY'S FEES

45.

Plaintiff incorporates by reference the allegations contained in 1-44 above as though fully set forth herein.

46.

As a result of defendants' actions as alleged herein, DOE has been required to retain the services of attorneys and are entitled to a reasonable amount for attorney's fee pursuant to 42 U.S.C. § 1988 for those violations covered by the Civil Rights Act.

## DAMAGES

47.

Plaintiff incorporates by reference the allegations contained in paragraph 1-46 above as though fully set forth herein.

48.

The acts and omissions of defendants as set forth above have resulted in injury to DOE. By virtue of these injuries, DOE is entitled to the following damages:

    A. Compensatory damages for the violation of DOE's rights under the federal and state Constitutions;

    B. His mental and emotional pain and suffering, past and future;

    C. His humiliation and sociological distress, past and future;

    D. His loss of foreseeable income;

    E. Punitive damages in a reasonable amount that is sufficient to adequately punish all defendants and to deter future conduct of the reprehensible type alleged in this complaint; and

    F. The costs of this action, attorneys fees, and such other and further

relief as this Court deems equitable and proper.

49.

WHEREFORE, Plaintiff prays for judgment against the defendants as follows:

A.   Plaintiff prays for damages in an amount which will fairly and justly compensate them for the violation of their civil rights, their pain and suffering and other consequential damages flowing from the violations and torts set forth herein;

B.   Punitive damages in an amount sufficient to adequately punish defendants and to deter future conduct of the type alleged in this Complaint;

C.   For attorneys fees pursuant to 42 U.S.C. § 1988; and

D.   For the costs of this action and for such other and further relief as this Court deems equitable and proper.

## JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL

DOE requests that this matter be tried to a jury in North Platte, Nebraska.

JOHN DOE, Plaintiff,

s/ Maren Lynn Chaloupka

By:_____
    Maren Lynn Chaloupka – NSBA # 20864
    Robert P. Chaloupka – NSBA # 10653
Chaloupka Holyoke Hofmeister Snyder & Chaloupka
1714 2nd Avenue
P.O. Box 2424
Scottsbluff, Nebraska 69363-2424
(308) 635-5000