IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOHN DOE,                                )<br>                                          )<br>        Plaintiff,              )<br>                                          )<br>   v.                                    )<br>                                          )<br>ELWOOD PUBLIC SCHOOL      )<br>DISTRICT, a Nebraska political   )<br>subdivision, and DAVID BLESSING, )<br>individually and in his official capacity, )<br>                                          )<br>        Defendants.           )<br>                                          ) | 7:04CV5011<br><br><br><br>MEMORANDUM AND ORDER |

INTRODUCTION

John Doe, plaintiff, has filed a motion to compel answers to deposition questioning and for an award of attorney's fees [223]. The motion seeks information arising during the defense of the Elwood Public School District ("EPSD") and its superintendent, David Wade ("Wade") in a prior lawsuit filed by Justin Patrick Kelly (the Kelly case) on February 14, 1997. See filing 224, ex. A (Kelly complaint–Texas). For the reasons discussed herein, I shall grant the plaintiff's motion to compel. I deny, however, the plaintiff's request for attorney fees.

STATEMENT OF FACTS

Kelly was a student at LaPorte Junior High School in Harris County, Texas when he was sexually assaulted by Michael Kluck ("Kluck"), a teacher at LaPorte who had previously taught at EPSD for two school years beginning in the fall of 1992. Filing 224, ex. E (Blessing 2003 deposition), p. 16. Kelly's suit against EPSD and Wade alleged Kluck was hired by LaPorte after leaving EPSD, and therefore had access to LaPorte students such as Kelly, because EPSD and Wade provided Kluck with a positive

employment reference despite their knowledge or constructive knowledge of his prior sexually deviant behavior with students.

The Kelly case against EPSD and Wade was initially filed in Texas. EPSD tendered defense of the Kelly case to its insurer, Allied Insurance Company ("Allied"). EPSD and Wade filed motions to dismiss the Texas complaint for lack of personal jurisdiction, (see filing 224, ex. B), and the case against them was re-filed in the District Court of Gosper County, Nebraska. Allied retained Wolfe, Snowden, Hurd, Luers & Ahl, LLP to represent EPSD and Wade in the Nebraska state court action. Attorneys Steven Ahl and Dean Sitzmann, both partners in the Wolfe, Snowden law firm, handled the Kelly case. Filing 237 (Sitzmann Affidavit), §§ 1-2.

Doe's motion to compel focuses on Sitzmann's contacts and communications with Doe during the course of representing EPSD and Wade in the Kelly case. Sitzmann and the Wolfe, Snowden law firm do not represent the defendants in this lawsuit.

In addition to the Kelly civil suit, Kluck faced Texas criminal charges for sexually assaulting Kelly. Kluck pleaded guilty to those charges. Under the terms of Kluck's probation or mental health counseling, Kluck was required to report all prior sexual encounters with children to the authorities. One of those children was Doe. Kluck retained a Nebraska criminal defense lawyer who contacted the county attorney for Gosper County, Carlton Clark, (now-Judge Clark), on May 12, 1997. Without divulging the names of Kluck or Doe, Kluck's attorney asked Clark whether Kluck would face criminal charges in Gosper County if he confessed to sexually assaulting a child. Clark believed the child's need for treatment was paramount under the circumstances and agreed not to press charges against the attorney's client if the client came forward and revealed the name of his child victim. Filing 224, ex. C (Clark memorandum); ex. M (Clark deposition), p. 33-36 .

The attorney apparently passed this information on to Kluck because on June 2, 1997, Kluck contacted Clark directly. Kluck told Clark that during the time period he was teaching at EPSD, he sexually assaulted Doe. Filing 224, ex. C (Clark memorandum); ex. M (Clark deposition), p. 33-36. Clark states he reported Kluck's confession to superintendent Wade, EPSD's counselor, David Blessing ("Blessing"), and Sheriff Dave Schutz. Clark was hopeful that the school could provide counseling resources for Doe. Blessing acknowledges that Clark notified him in 1997 that Kluck had confessed to sexually assaulting Doe, (filing 224, ex. O (2006 Blessing deposition), p. 59. ); however, Wade claims he was not notified by Clark. Filing 224, ex. P (Wade deposition), p. 59.

Clark contacted Doe's parents on June 9, 1997 and advised them of Kluck's confession. Filing 224, ex. C (Clark memorandum); ex. M (Clark deposition), p. 38-40. Doe's parents, in turn, raised the issue with Doe, but Doe refused to talk about it. Filing 224, ex. S (M. Schutz deposition), p. 36. Doe's parents then contacted Blessing in June of 1997 and tried to arrange counseling sessions for their son. Filing 224, ex. S (M. Schutz deposition), p. 37-8. Doe was not willing to participate in counseling with Blessing.

The Kelly civil litigation was ongoing, and on December 15, 1999, Sitzmann contacted Clark. Sitzmann advised Clark that he represented EPSD and Wade in the Kelly case and, as part of his case preparation, arranged to meet with and interview Clark, Sheriff Schutz, and Gosper County Deputy Sheriff David Landreth on December 29, 1999 at the Gosper County courthouse. Filing 224, ex. D (Sitzmann letter); ex. M (Clark deposition), p. 48; filing 237, ex. C (Sitzmann affidavit).

The content of the December 29, 1999 meeting discussion is in dispute. Clark testifies that he told Sitzmann everything he knew about Kluck during that meeting, and had "No reason not to" tell Sitzmann that Kluck had confessed to sexually assaulting Doe. Ex. M (Clark deposition), p. 50-51. Sitzmann states Doe, and Kluck's confession

regarding Doe, were never mentioned at this meeting .   Filing 237, ex. B (Sitzmann deposition), pp. 74-77.

Blessing was deposed for the Kelly case on January 15, 2003.  Filing 224, ex. E (Blessing 2003 deposition), p. 1.  During that deposition, Blessing was asked if he was aware of any information indicating Kluck had sexually molested any student at EPSD. Blessing responded, "In the role of a school counselor, I've received no information that would pertain to that," but in the role of a private licenced mental health counselor, "I've received information which might indicate that."  Filing 224, ex. E (Blessing 2003 deposition), p. 10.   Blessing had divulged this information to no one before the date of his January 15, 2003 deposition, (filing 224, ex. E (Blessing 2003 deposition), p. 10), and he did not reveal Doe's identity during the deposition.  Blessing testified that his information about Doe came from sources other than Doe.  Blessing testified that he attempted to counsel Doe about the sexual assault, but Doe denied being sexually molested by Kluck.  Filing 224, ex. E (Blessing 2003 deposition), pp. 13-14; ex. O (Blessing 2006 deposition), pp. 83.  In contrast, Doe testified that Blessing counseled him about staying in school, but never asked if he had been sexually assaulted by Kluck.  Filing 224, ex. L (Doe deposition–October 13, 2003), pp. 142-43.

On March 13, 2003, Kelly's counsel filed a motion to compel EPSD to produce the name and current whereabouts of EPSD students who may have been molested by Kluck during his employment with EPSD as identified by Blessing and Wade in their depositions.  Filing 224, ex. F (Motion to Compel), pp. 5-6.  The hearing on this motion was set for April 9, 2003.  Filing 224, ex. F (Motion to Compel), p. 6.

Upon receiving the motion, Sitzmann called Blessing and asked for his assistance in reaching Doe.  Blessing testified that Sitzmann specifically identified Doe by name.  Blessing testified that he cannot explain how Sitzmann knew Doe's name since Sitzmann and Blessing had not spoken since the deposition, and Blessing did not identify Doe by name to anyone during or after the deposition.  According to Blessing,

4

Sitzmann did not tell Blessing why he needed to reach Doe. Filing 224, ex. O (Blessing 2006 deposition), pp. 79-80, 107-08.

In contrast, Sitzmann testified that he did not ask for Doe by name. Rather, Sitzmann claims he asked Blessing to contact the unidentified student discussed in Blessing's 2003 deposition and ask that student to contact Sitzmann. Sitzmann claims Doe later called him. Filing 237, ex. B (Sitzmann deposition), p. 64.

Since Sitzmann represented EPSD in the pending Kelly litigation, Blessing agreed to call Doe's parents to obtain information on how to contact Doe. Filing 224, ex. O (Blessing 2006 deposition), pp. 82-3; ex. S (M. Schutz deposition), p. 41; ex. T (S. Schutz deposition), p. 25-6. When Blessing spoke to Doe's parents, they initially stated Doe did not want to be involved in the Kelly case. However, Blessing convinced them to provide the contact information. Filing 224, ex. O (Blessing 2006 deposition), pp. 92-3.

Blessing then contacted Doe and told him Sitzmann wanted to talk to him. Doe did not want to speak with Sitzmann. Blessing testified that he told Doe, "if a lawyer wants to get ahold of you, I imagine they'll probably get ahold of you, I would give the guy a call." Filing 224, ex. O (Blessing 2006 deposition), p. 96. See also filing 237, ex. B (Sitzmann deposition), p. 91. Doe disputes Blessing's testimony. According to Doe, Blessing stated Doe's deposition had been requested in the Kelly case, Blessing did not want Doe exposed to the ongoing court processes, and if Doe did not want to travel to Lincoln to testify, he would need to sign an affidavit stating nothing had happened to him. Filing 224, ex. L (Doe deposition–October 13, 2003), pp. 137-38. Doe agreed to speak with Sitzmann. Filing 224, ex. R (Doe 2006 deposition), p. 112.

Sitzmann and Doe spoke to each other on the phone that afternoon for about ten to fifteen minutes. Filing 224, ex. L (Doe deposition–October 13, 2003), pp. 135-36; ex. R (Doe 2006 deposition), p. 114-115; filing 237, ex. B (Sitzmann deposition), p. 89-90.

Sitzmann identified himself as counsel for EPSD.  According to Sitzmann, they discussed the contents of the affidavit and agreed that Sitzmann would send the draft affidavit to the law office of David Urbom.  Mr. Urbom had previously represented Doe, and his office was located near Doe's home.   Filing 237, ex. B (Sitzmann deposition), p.96.  Sitzmann testified that he did not know Kluck had confessed to sexually molesting Doe at the time he contacted Doe and drafted the affidavit, but he also acknowledges that he never asked Doe if he was sexually assaulted by Kluck.  Filing 224, ex. L (Doe deposition–October 13, 2003), pp. 136-37; filing 237, ex. B (Sitzmann deposition), p.111.

Doe disputes Sitzmann's testimony.  According to Doe, Sitzmann said he had already talked to Blessing, and he was going to draft an affidavit for Doe's signature.  Doe testified that Sitzmann explained that Doe's deposition was being sought for the Kelly case, Doe would need to drive to Lincoln if deposed, and the only way he could avoid being deposed was to sign an affidavit stating Kluck had not molested him.  Filing 224, ex. L (Doe deposition–October 13, 2003), pp. 135-36; ex. R (Doe 2006 deposition), p. 114-16.  Doe claims no real dialogue occurred and he was never asked about the contents of the affidavit.   Filing 224, ex. R (Doe 2006 deposition), p. 118-19.  Neither Sitzmann nor Blessing told Doe that Kluck had confessed to the sexually assaulting him.   Filing 224, ex. L (Doe deposition–October 13, 2003), pp. 139.  Doe states he has never told anyone he was sexually assaulted or abused by Kluck.  Filing 224, ex. R (Doe 2006 deposition), p. 97-8.

Sitzmann drafted and Doe signed an affidavit stating as follows:

2.    I had private counseling with David Blessing, who was also the counselor for Elwood Public Schools.  One of the issues that David Blessing inquired of me in counseling was whether I had any information regarding inappropriate conduct by Michael Kluck when he was a teacher at Elwood. . . .

3.    I have no information regarding ay inappropriate conduct by Michael Kluck at any time, I have no information that anyone on the staff of Elwood

6

> Public School had information of any inappropriate sexual conduct by
> Michael Kluck when he was a teacher at Elwood Public Schools.

Filing 224, ex. H (Doe affidavit–April 7, 2003).  Doe was 21 years old when he signed this affidavit.  Filing 224, ex. J (M. Schutz affidavit), ¶ 4.  Doe states he signed this affidavit because "if I was to sign that, . . . I wouldn't have to come out with the secret and go to court and everything and let everybody know exactly what happened."  Filing 224, ex. R (Doe 2006 deposition), p. 110.

EPSD used this affidavit to move for a protective order concealing Doe's identity in the Kelly case.  Filing 224, ex. G (Motion to Compel/for Protective Order), pp. 2-3.  Doe's affidavit was submitted for *in camera* review by the court, with the motion stating:

> The materials to be viewed by the court in camera conclusively establish
> that the individual identified by "John Doe(s)" in Plaintiff's Motion has no
> information relating to any inappropriate conduct by Michael Kluck when
> he was a teacher at Elwood Public School District.

Filing 224, ex. G (Motion to Compel/for Protective Order), p. 3.  The motion for protective order was signed by Sitzmann.  Filing 224, ex. G (Motion to Compel/for Protective Order), p. 4.  An affidavit of Blessing accompanied Doe's affidavit.  Blessing's affidavit states:

> The only student with whom I ever discussed Michael Kluck after Kluck
> left Elwood, (the "John Doe" on page 5 of the Plaintiff's Motion) is the
> individual who has signed the Affidavit attached hereto and incorporated
> herein by reference.  This is the individual who I was discussing in my
> deposition testimony.

Filing 224, ex. G (Motion to Compel/for Protective Order), attached Blessing affidavit.

On September 15, 2003, Doe signed a second affidavit retracting the statements in his prior affidavit.  The September 15, 2003 affidavit states:

> 2.    In approximately April of 2003, the school counselor, Mr. Blessing and the
>       school district's attorney, Dean Sitzmann, talked to me about signing an

>   affidavit in the case of Kelly B. Elwood. I was generally aware of the case and knew it involved Michael Kluck molesting a young boy in Texas.
>
> 3.   Mr. Blessing and Mr. Sitzmann told me that if I signed an affidavit saying that nothing inappropriate happened to me when Michael Kluck was in Elwood, I could put what happened behind me. I could go on with my life and I would not be bothered anymore. I told them that I had put it all behind me, that I wanted to go on with my like and forget about it, and not be bothered about what happened in the past. They told me if I signed the affidavit denying that Michael Kluck molested me, that would be the end of it, so I signed it, even though it was not true. Michael Kluck molested me in 1993 when he was an employee of the Elwood Public Schools.

Filing 224, ex. I (Doe affidavit–September 15, 2003). See also Filing 224, ex. R (Doe 2006 deposition), p. 106-109.

Sitzmann promptly subpoenaed Doe to appear for a deposition on September 25, 2003. Filing 224, ex. K (Subpoena). Doe was represented by Maren Chaloupka at that deposition and in this lawsuit. Filing 224, ex. L (Doe deposition– October 13, 2003).

Doe has filed suit against EPSD, Wade, Blessing, Allied, and AMCO Insurance Company. Filing 111 (Second Amended Complaint). Doe seeks damages for the harm caused by Kluck's sexual assault. He also alleges separate, distinct, and additional harm arose from the conduct of Blessing and Sitzmann who, acting on behalf of EPSD and its insurers, encouraged and convinced him to sign an affidavit stating no sexual assault had occurred when they knew or should have known the affidavit was false. Filing 111 (Second Amended Complaint), ¶¶ 13-16. Doe has retained experts who will testify that convincing a child sexual assault victim to deny the assault adds insult to injury and re-victimizes the victim. Filing 224, ex. U (Conte Report), p. 106-109; ex. W (Shore deposition), pp. 56-58, 62.

Doe has deposed Sitzmann, Wade, Blessing, and Einspahr. The defendants and Sitzmann have refused to answer questions concerning when and how they found

out Kluck had confessed to sexually assaulting Doe.  Sitzmann and the defendants claim the following questions seek information protected from discovery by the attorney client privilege and work product doctrine.

1. When did the name of [Doe] come up, and what was the source of his identity?   Filing 237, ex. B (Sitzmann deposition), 55:10-11.

2. Did the name of [Doe] as a party of interest come up during the investigation of the Kelly case?  Id. 56:08.

3. When did Sitzmann learn about Doe?  Id. 78:3-4.

4. Did Sitzmann know anything about Doe before Blessing's 2003 deposition?  Id. 59:1-3.

5. Did Sitzmann learn anything about Doe from any source other than Blessing's 2003 deposition?  Id. 59:8-10.

6. Did Sitzmann learn anything about Doe from any source other than the Wade and 2003 Blessing depositions?  Id. 59:24-25.

7. Was Blessing the person who disclosed John Doe's name to Sitzmann?  Id. 64:21-23.

8. Did Doe's identity, and his significance to the Kelly case, come from Blessing?  Id. 67:11-14.

9. Did Sitzmann discuss Doe with Blessing?  Id. 72:7-8.

10. Did Sitzmann talk with any other employee of EPSD about Doe other than Blessing?   Id. 72:15-17.

11. Why did Sitzmann meet with Carlton Clark, Dave Landreth, and Dave Schutz in December 1999?   Id. 75:10-13.

12. Carlton Clark learned that Chris was a victim of Mr. Kluck in 1997, so when did Sitzmann become aware of Doe if not in 1999?  Id. 78:1-4.

13. Did EPSD, through its employees, have knowledge that Kluck had assaulted Doe at any time prior to the time that Sitzmann submitted the affidavit to Judge Battershell?  Id. 81:4-8.

14. When did Sitzmann learn about Blessing's counseling of Doe? Id. 82:5-25.

15. Why and how did Blessing set up the conversation between Doe and Sitzmann? Id. 91:1-5-6.

16. When did Sitzmann learn of evidence or allegations that Kluck molested Doe? Id. 97:23-98:3.

17. Did Sitzman know about allegations that Kluck had molested Doe before the 2003 deposition of Blessing? Id. 98:17-21.

18. What information did Sitzmann have concerning allegations that Kluck molested Doe at the time Doe's April 7, 2003 affidavit was drafted? Id. 100:14-101:9.

19. Is it true that before Doe's April 7, 2003 affidavit was drafted, no one ever told Sitzmann that Kluck admitted to Clark that he had sexually molested Doe? Id. 102:22-25.

Though Blessing answered some of these questions, others were not answered. Rich Einspahr, the EPSD superintendent as of July 2002, and Wade, the former EPSD superintendent, have raised the privilege as to all such questions and have refused to answer. Filing 224, ex. P (Wade deposition), pp. 6-11; ex. Q (Einspahr deposition), pp. 6-10.

## LEGAL ANALYSIS

The plaintiff's motion to compel seeks responses to questions aimed at determining when and how Sitzmann was informed that Kluck had confessed to sexually molesting Doe. The purpose of these questions is to determine whether Sitzmann negligently, recklessly, or intentionally convinced a sexual assault victim to falsely deny being assaulted in order to conceal the identity of that victim as a witness in a civil case, and if so, whether the defendants assisted their counsel in this effort. These questions are relevant to the plaintiff's claim that Doe experienced "revictimization" from being encouraged to deny being sexually assaulted. Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery

regarding any matter, not privileged" that is relevant to the claims or defenses raised by any party.

The defendants claim the requested information is protected from disclosure by the work product doctrine and the attorney-client privilege. The party claiming the benefit of these privileges has the burden of establishing the right to invoke their protection. Hollins v. Powell, 773 F.2d 191, 196 (8th Cir. 1985).

1. Attorney-Client Privilege.

Though the parties' briefs include passing references to the attorney-client privilege, neither party has cited case law or argued the issue of whether the attorney-client privilege is applicable to the precise questions raised on this motion to compel. The attorney-client privilege prohibits disclosure of "confidential communications" between an attorney and the client made for the purpose of obtaining legal advice. In re Grand Jury Proceedings, 791 F.2d 663, 665 (8th Cir. 1986); Neb.Rev.St. § 27-503 (1). "A communication is confidential if not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." Neb.Rev.St. § 27-503 (1)(d). However, not all information gained by an attorney during the relationship with a client is privileged. The attorney-client privilege does not function to prevent disclosure of damaging or incriminating information. Rather, the privilege guards only against disclosures of confidential client communications. In re Grand Jury Proceedings, 791 F.2d at 665 (holding the attorney client privilege did not apply to questions posed to counsel concerning when and how many times she met with her client, whether she prepared documents at his request, and whether the client's picture and signature were recognized in exhibits).

On the record before me, it is undisputed that Kluck confessed to sexually molesting Doe, that Sitzmann ultimately learned Kluck confessed to this assault, and

that Blessing knew of Kluck's confession before Doe's affidavit was drafted. The plaintiff seeks a court order permitting him to discover when Sitzmann knew of Kluck's confession, and the source of his information,

The attorney-client privilege protects only the content of communications between counsel and client, not the date when those communications occurred. An opposing party is allowed to discover when even privileged events occurred. Ramseur v. Chase Manhattan Bank, 865 F.2d 460 (2d Cir. 1989)(holding that while the contents of a memorandum documenting the meeting between a black employee's superiors and the corporate legal department may include privileged legal advice, the date of the meeting and that fact that such a meeting occurred was not privileged and may be used to prove the employee's discharge was pretextual). See also Colton v. United States, 306 F.2d 633, 636 (2d Cir.1962) (compelling plaintiff's attorney to answer "questions which pertain to the date and general nature of the legal services performed by [his] firm ... as they do not call for any confidential communication"); Savoy v. Richard A. Carrier Trucking, Inc., 178 F.R.D. 346, 350 (D. Mass.1998) ("the fact of the attorney-client relationship and the dates on which services were performed are not necessarily privileged"); Parker v. Kitzhaber,1989 WL 69960 at *1 (D. Or. 1989) ("The attorney-client privilege is inapplicable to the extent that the interrogatory seeks [,inter alia,] the names ... and dates of contact with client representatives. The attorney-client privilege does not cover issues relating to the creation or existence of the attorney-client relationship.... Furthermore, the requested information will not disclose the substance of communications between attorney and client."); Condon v. Petacque, 90 F.R.D. 53, 54 (N.D.Ill.1981) ("The privilege does not foreclose inquiry into the fact of representation itself or the dates upon which services are rendered as long as the substance of the attorney-client relationship is shielded from disclosure. Thus, while the 'structural framework' of the attorney-client relationship may be discovered, the substance of that relationship must remain confidential."); Cohen v. Uniroyal, Inc., 80 F.R.D. 480, 483 (D.C. Pa. 1978)(holding that interrogatories seeking disclosure of the identity of defense lawyers, the identity of persons retaining, supervising or consulting with those lawyers,

the identity of documents recording or referring to the lawyers or certain of their work, the dates that services were rendered, the hours spent and the overall duration of the attorney-client relationship, and a description of the nature of the work performed sought only facts surrounding the attorney-client relationship, and did not threaten to reveal the substance of any confidential communications).

The date when a client communication was made is not a confidential client communication. There is no showing that confidential communications between the attorney and client will be revealed if Sitzmann, the defendants, or their employees are required to answer questions regarding when they first learned Kluck had confessed to sexually assaulting Doe.

The defendants also claim that identifying the source of Sitzmann's knowledge would violate the attorney-client privilege. The identity of information sources, like the identity of a client, is generally not considered a confidential client communication. In re Grand Jury Proceedings Subpoena to Testify to: Wine, 841 F.2d 230, 234 n. 3 (8th Cir. 1988)(stating client identity is not a confidential professional communication protected by the attorney-client privilege); Plump v. Kraft Foods North America, Inc., 2003 WL 22299019, *5 (N.D. Ill. 2003)(holding that questions regarding how plaintiff's counsel acquired a copy of the defendant's handbook did not implicate the attorney-client privilege; defense counsel was not delving into any issue involving legal advice based on confidential attorney-client communications, particularly where the plaintiff testified he did not give his attorney the document); Orgulf Transp. Co. v. Magnolia Marine Transp., 1998 WL 351845 at *2 (E.D. La. June 25, 1998)(holding that interrogatories seeking the identity of persons who were interviewed or gave statements, the dates of interviews or statements, and the present custodians of any such statements do not seek privileged attorney-client communications); Parker v. Kitzhaber, 1989 WL 69960 at *1 (D. Or. June 8, 1989)(holding that the attorney-client privilege is inapplicable to the extent that an interrogatory seeks the names and dates of contact with client representatives who provided information to counsel).

Even assuming that identifying the source of Sitzmann's knowledge could reveal attorney-client confidences, there is no showing that such circumstances exist in this case. The defendants have not submitted evidence to the court, *in camera* or otherwise, supporting their privilege claim, and under the facts presented, the court cannot infer that Sitzmann obtained his information about Kluck's confession through a confidential client communication. Kluck's confession was not a secret known only to the defendants or its employees; Kluck, Clark, the Gosper County Sheriff and Deputy Sheriff, Doe's parents, and anyone to whom they further disseminated the information also knew Kluck had confessed to sexually assaulting Doe.

If Kluck's confession was conveyed to Sitzmann by someone other than the defendants or their employees or agents (including Blessing), even if Sitzmann later discussed the confession with his client, neither the confession itself, nor the identity of the source who conveyed the information to Sitzmann, is protected from disclosure by the attorney-client privilege. In re Sealed Case, 737 F.2d 94 (D.C. Cir. 1984)(holding that communications from attorney to client are shielded if they rest on confidential information obtained from the client, but if the attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged); TVT Records v. Island Def Jam Music Group, 214 F.R.D. 143, 148 (S.D. N.Y. 2003) ("[T]he communication is not privileged to the extent it merely relays the content of the attorney's conversation with a third party."). "It is clear that when an attorney conveys to his clients facts acquired from other persons or sources, those facts are not privileged." Energy Capital Corp. v. U.S., 45 Fed. Cl. 481, 485 (2000)(quoting Antoine v. Atlas Turner, Inc., 66 F.3d 105, 110 (6th Cir. 1995)).

Even if the defendants or their employees or agents were the source of Sitzmann'a knowledge, there is no showing that the knowledge was imparted as a confidential communication. An important requisite for asserting the attorney-client privilege is showing that the communication was meant to be kept secret. If information is communicated to the lawyer with the intent or understanding that it will be

transmitted to a third party, (for example, to answer discovery requests), the content of statement and the source of the information is not privileged.  U.S. v. Lawless, 709 F.2d 485 (7th Cir. 1983); U. S. v. Bump, 605 F.2d 548 (10th Cir. 1979).

The defendants and Sitzmann have failed to make the requisite showing to assert the attorney-client privilege as a basis for refusing to answer the deposition questions at issue.   The attorney-client privilege does not justify their refusal to answer questions concerning when and from whom Sitzmann learned Kluck had confessed to sexually assaulting Doe.

      2.     Work Product Doctrine.

Blessing, Wade, Einspahr, and Sitzmann also refused to answer deposition questions based on the work product doctrine.  As explained in Hickman v. Taylor, 329 U.S. 495, 508 (1947), work product extends to all documents and tangible things prepared by or for a party, the party's attorney, or their agents in anticipation of litigation rather than merely protecting confidential communications between the attorney and client.

> The work product doctrine is distinct from and broader than the attorney-client privilege, (In re Murphy, 560 F.2d 326, 337 (8th Cir.1977)), and was designed to prevent "'unwarranted inquiries into the files and mental impressions of an attorney[.]' "Simon v. G.D. Searle & Co., 816 F.2d 397, 400 (8th Cir.), cert. denied, 484 U.S. 917 (1987) (quoting Hickman v. Taylor, 329 U.S. 495, 510 (1947)).  The doctrine recognizes that lawyers must be allowed to work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Id. Materials are not protected under the work product doctrine unless they were prepared in anticipation of litigation, and materials prepared in the ordinary course of business are not protected. Id.

Turner v. Moen Steel Erection, Inc., 2006 WL 3392206, *7 (D. Neb. October 5, 2006) (Gosset, M.J.).  As with the attorney-client privilege, work product immunity does not provide a "shield against discovery, by interrogatories or by deposition, of the facts that

15

the adverse party's lawyer has learned, or the persons from whom he has learned such facts. . . "  Wright and Miller, Federal Practice and Procedure, Civil § 2023 at 194.  It also does not preclude discovery of when those facts were learned.  See e.g. Turner, 2006 WL 3392206 at *7 (holding privilege and work product protection were waived for all materials not identified on a privilege log which included disclosure of the identity and position of a document's author and the date it was written); Protective Nat. Ins. Co. of Omaha v. Commonwealth Ins. Co., 137 F.R.D. 267, 285 at n. 3 (D. Neb. 1989) ("If Commonwealth believes that documents . . . are otherwise not discoverable because of a privilege or because of the application of the work product doctrine, it may withhold production of the document and shall then immediately provide a description of the document withheld . . . , the identity and position of its author, the date it was written, the identity and position of its addressee, the identities and positions of all persons who were given or have received copies of it, and the dates copies were given to them, and the document's present location and identity and position of its custodian. . . .").

The work product doctrine provides no justification for the refusal of Blessing, Wade, Einspahr, and Sitzmann to answer the deposition questions concerning when Sitzmann was informed that Kluck had confessed to sexually molesting Doe and the source of that information.

    3.    <u>Attorney Fees</u>.

A party should not have to file a motion to compel to receive appropriate discovery responses.  Under Federal Rule of Civil Procedure 37(a)(4):

> [I]f the motion [to compel] is granted, the court shall . . . require the party . . . whose conduct necessitated the motion . . . to pay . . . the reasonable expenses     incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

The court must award expenses against a party whose conduct necessitated a motion to compel discovery unless the court finds there was a justifiable reason for opposing the motion.  <u>Cal Dive Intel, Inc. v. M/V Zaman</u>, 127 F.R.D. 213, 217 (S.D. Ala. 1989); <u>American Hangar, Inc. v. Basic Line, Inc</u>., 105 F.R.D. 173, 176 (D. Mass. 1985).

Doe claims that, in his role as a potential witness for a prior and separate lawsuit, he was independently injured by the overreaching and overzealous discovery methods employed by defendants' former counsel.  Fortunately, such allegations are rarely encountered.  Accordingly, the attorney-client and work product issues confronted during the deposition of Sitzmann and the defendants were complex, very unique, and not readily resolved by referring to or researching the Federal Rules of Civil Procedure, this court's local rules, or federal case law.  Under such circumstances, the defendants and Sitzmann shall not be ordered to pay the plaintiff's attorney fees in pursuing this motion.  However, the parties, Sitzmann, and all counsel appearing in this case on behalf of any party or witness are cautioned that incivility and gamesmanship during further proceedings will not be tolerated or ignored by the court.

**IT IS ORDERED** that plaintiff's Motion to Compel Discovery and For Award of Reasonable Attorney's Fees [223] is granted in part, and denied in part, as follows:

1. The Motion to Compel Discovery is granted.  Defendants are given until and including **January 16, 2007** to provide the responsive information.
2. The request for attorney's fees is denied.

DATED this 18th day of December, 2006.

                                              BY THE COURT:

                                              s/ F.A. Gossett
                                              United States Magistrate Judge